IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TOMMY F. GIBSON, }<br>}<br>Plaintiff, }<br>}<br>v. }<br>}<br>TRANSPORT DRIVERS, INC., }<br>LEONARD RAY PRIVITT, INDIVIDUALLY}<br>and KRIS IWANSKI, INDIVIDUALLY }<br>}<br>Defendant, } | CIVIL ACTION NO. H-04-2083 |

**MEMORANDUM AND OPINION ON SUMMARY JUDGMENT**

Pending before the court is the Motion of the Plaintiff, Tommy F. Gibson, Sr. (hereinafter "Gibson") for Partial Summary Judgment on Liability and Integrated Relief (Doc. 22), and the Motion for Summary Judgment (Doc. 23) of Defendants, Transport Drivers, Inc. ("TDI"), Leonard Ray Privitt ("Privitt"), individually, and Kris Iwanski ("Iwanski"), Insurance Manager for TDI. The Court will refer to Defendants under the name of the company Defendant, TDI, as Gibson alleges no specific claims against the individual defendants, but refers to them for purposes of holding the company liable.

**I.     Legal Standard : Summary Judgment**

When both parties move for summary judgment, the court reviews each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party. *Ford Motor Co. v. Tex. DOT*, 264 F.3d 493, 498 (5th Cir. 2001). Each movant seeking summary judgment must inform the court of the basis of his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material; i.e., only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 248, 256-57 (1986). The movant need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex*, 477 U.S. at 323-25. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). If it is evident that the party seeking summary judgment against one who bears the proof burden has no access to evidence of disproof, and ample time has been allowed for discovery, he should be permitted to rely upon the complete absence of proof of an essential element. *Fontenot v. Upjohn,* 780 F.2d at 1195. If the moving party fails to meet its initial burden, the motion must be denied, regardless of the non-movant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the movant meets his burden, the burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the

burden of proof at trial. Fed. R.Civ. P. 56(c). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R.Civ. P. 56(e); *Anderson*, 477 U.S. at 256-157. The non-movant may point to evidentiary documents already in the record that set out specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). Furthermore, the non-movant does not likewise have to present its own evidence, but may point out genuine issues of fact extant in the summary judgment evidence produced by the movant, if any. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).

## II.     Factual and Procedural Background

Gibson filed the instant action alleging violations of the Family and Medical Leave Act (the "FMLA") 29 U.S.C. § 2601, *et seq*., or in the alternative, claims under Texas state law for (1) common law fraud and (2) negligent misrepresentation. (Doc. 1.) The source of jurisdiction asserted was based upon the FMLA exclusively because Gibson and Privitt are residents of the State of Texas. (Doc. 1, ¶¶ 1.01, 1.03, 2.02.)

Gibson alleges the Defendants violated the FMLA by failing notify him in a timely and proper manner that TDI had changed its rules and would now require him to exhaust his vacation and sick time concurrently with the time he took his FMLA leave. It is asserted that after Gibson took an approved vacation, under a TDI rule, Gibson in fact had no vacation time left, such time having been used up during his FMLA leave, leading to excessive absences on Gibson's record and resulting in his termination upon return from vacation. Gibson asserts the instant action can be determined on liability as a matter of law as no material facts are in dispute.

Gibson was hired and worked for TDI for more than 15 years as a truck driver until his employment was terminated on May 3, 2004.  (Doc. 22, Declaration of Tommy F. Gibson, Sr., p. 1)  Gibson declares that over two months prior to May 3, 2004, he informed TDI, by telling Leonard Ray Privitt, that he would be taking an early, TDI-allowed, paid vacation beginning May 3, 2004, and that he was leaving for vacation after work on April 30, 2004.  (*Id.* at 2.)  Two weeks prior to his vacation, Gibson declares he reported to TDI, through Privitt, that he had injured his back and could not return to work for a week per doctor's instructions.  (*Id.*)  He declares he was told he could use FMLA leave for the time he was taking out for his condition.  (*Id.*)  He returned to work on April 26, 2004.  (*Id.*)

Gibson declares he received no written guidance or notice during his week on leave or the week after his return from leave, but before his scheduled vacation, about any elections or requirements he had to make with respect to his leave pursuant to the FMLA under 29 C.F.R. 825.301(a)(2), (B)(1)(iii), (c) and (c)(1).  (*Id.* at p. 3; Gubson Declaration, pp. 2-3.)  Gibson further declares he was not given notice in writing that under the company's policies that TDI required him to exhaust his vacation or sick leave as part of taking his FMLA leave.  (*Id.*, Gibson Declaration, p. 3.)  On Friday, April 30, 2004, Gibson left after work to go on his scheduled vacation.  (*Id.*)

When Gibson returned from vacation, he discovered a letter at his home dated April 26, 2004, but not postmarked until April 30, 2004.  The letter from TDI informed him that the leave he had taken from April 16, 2004, through April 25, 2004, was qualified FMLA leave.  Attached to the letter was a document entitled U.S. Department of Labor Fact Sheet #28, stating in relevant part

> Also, subject to certain conditions, employees or employers may choose to use accrued paid leave (such as sick or vacation leave) to cover some or all of the FMLA leave....
>
> Also, covered employers must inform employees of their rights and responsibilities under FMLA, including giving certain written information on what is required of the employee....(Doc. 22, Gibson Declaration, p. 2; Ex's 2 & 3.)

Gibson further points to this language in conjunction with language from TDI's Employee Handbook & Operations Manual for Drivers Assigned to C.I.P. Deer Park, Texas (the "TDI Handbook"), which latter document, he asserts, does not state whether or not TDI will require the substitution of paid leave for leave taken under the FMLA.

> As a responsible employer, Transport Drivers, Inc. will adhere to all of the requirements of the Family and Medical leave Act of 1993, wherever the conditions of the Act may apply. If you have any questions regarding this Act, please contact your Area manager for an explanation. (*Id*., Gibson Declaration, p. 1 (*citing* TDI Handbook, Ex. 1)).

These sections are relevant for Gibson's argument, because the April 26 letter also states in relevant part

> As your employer, we require that you substitute accrued paid leave for unpaid leave during an approved FMLA period. Hence all accrued sick and vacation time will be paid at the commencement of your FMLA leave until exhausted.

*Id*. at Ex. 2.

Gibson states he did not have written notice of this latter provision before his vacation. (*Id*., Gibson Declaration, p. 3.) Rather, on May 4, 2004, while Gibson was on vacation and before he had received the TDI/Iwanski letter sent April 30, 2004, Ray Privitt sent a letter to Gibson dated May 3, 2004, stating that Gibson had been fired from his position effective May 3, 2004, for excessive absenteeism. (*Id*., Gibson Declaration, p. 3; Ex's 4 & 5.) This termination occurred, according to Gibson, because he never received timely written notice that his vacation time had been exhausted prior to his taking it, through the use of

combined FMLA/paid leave, and that the vacation he took ended up being considered a non-allowable absence.  (*Id*. at 5; Gibson Declaration, p. 3; Ex's 2 & 3.)

Gibson alleges that TDI, Iwanski and Privitt violated the FMLA by failing to notify Gibson of his rights under the FMLA in writing and on a timely basis; by failing to notify Gibson of the employer's requirements under the FMLA in writing and on a timely basis; and, by terminating Gibson's employment as a result of his use of FMLA leave.  (Doc. 22, p. 5.)

TDI defends Gibson was not an "eligible employee" who is afforded any of the rights and/or remedies provided under the FMLA, as TDI did not employ a sufficient number of employees at its Deer Park location in Texas, to qualify Gibson as an "eligible employee" within the meaning of the statute.

Furthermore, TDI points out that Gibson's declaration emphasizes that he did not receive *written* notice of TDI's policies regarding leave, when in fact he did receive oral notice from Privitt, prior to Gibson's leaving on April 30, 2004, that the vacation he was about to take was not approved and that he had to return to work on May 3, 2004, but Gibson decided to nevertheless take his vacation away, and did not show up for work on May 3, 2004.  (Doc. 25, p. 7; Privitt Declaration, Ex. B., ¶¶ 2-3.)  Therefore, argues TDI, even if the court were to consider a claim by Gibson for retaliation under the FMLA pursuant to the *McDonnel Douglas* burden shifting framework, Gibson could not establish a *prima facie* case because he was fired for a legitimate reason,  "Unauthorized absenteeism" as the cause for termination.  (*Id*., p. 7-8; Privitt Declaration, Ex. B.,  ¶¶ 2-3; Doc. 26, Employee Handbook and Operations Manual, Ex. 1, pp. 8-9, § 5(f).)

To this latter assertion by TDI, Gibson retorts with a Second Declaration, wherein he asserts that he was not told *before* he left for vacation that he would be fired if he went on vacation or that his vacation was not approved. (Doc. 29, Gibson Declaration (2nd), p.1.) Gibson declares that *after* he left work to go on vacation on April 30, 2004, and while he was packing his car, he received a call from his dispatcher to cal Privitt, whom he called and who he asserts told him he had to come to work on Monday, May 3, 2004. (*Id*. at p. 2.) Gibson asserts that at that time he was already on vacation which was approved, that he believed he had vacation time left, and that he was not "told anything other than I had FMLA leave and I had approved vacation before I left for vacation" and that he "had NO knowledge before [he] left that [TDI] expected me to be at work on May 3, 2004. (*Id*.)

III.    **Analysis**

The Family and Medical Leave Act of 1993 allows eligible employees working for covered employers to take temporary leave for medical reasons, for the birth or adoption of a child, and for the care of a spouse, child, or parent who has a serious health condition, without the risk of losing employment. *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 762-63 (5th Cir. 2001)(*citing* 29 U.S.C. § 2601(b)(1) and (2)). The statute contains two distinct sets of provisions. *Id*. at 763 (*citing Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 163 F.3d 379, 383 (5th Cir. 1998)). The FMLA provides a series of *prescriptive*, substantive rights such that, for example, a covered employer must allow an eligible employee up to 12 weeks of unpaid leave if the employee suffers from a serious health condition that makes the employee unable to perform the functions of the position. *Id.* (citing 29 U.S.C. § 2612(a)(1)(D); *See Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, 319 (5th Cir. 1999). When an eligible employee returns from leave

taken under the FMLA, the employer must restore the employee to the same position or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id*. (*citing* 29 U.S.C. § 2614(a)(1).  The FMLA also contains proscriptions against penalizing an employee for the exercise of FMLA rights.  *Id*. (*citing* 29 U.S.C. 2615(a)(1)-(2).  If an employee fails to return to work on or before the date that FMLA leave expires, the right to reinstatement also expires.  *Id*. (*citing cases*).  If an employee does not seek to return to work on or before his FMLA leave expires, the employer is no longer under a statutory duty to reinstate him to his former, or to an equivalent, position.  *See id*. at 764.

TDI asserts the FMLA does not provide jurisdiction for this cause, *ab initio*, as TDI did not employ a sufficient number of employees at its Deer Park location in Texas, to qualify Gibson as an eligible employee.  The term "eligible employee" is defined as follows:

> Eligible Employee.
> (A) In general.  The term "eligible employee" means an employee who has been employed
> > (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
> > (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.
> B) Exclusions.  The term "eligible employee" does not include
> ...
> > (ii) any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50.

29 U.S.C.A. § 2611(2).

Furthermore, the regulations provide

> Whether 50 employees are employed within 75 miles to ascertain an employee's eligibility for FMLA benefits is determined when the employee gives notice of the need for leave.

29 C.F.R. 825.110(f).

TDI asserts, as demonstrated by the Affidavit of Ronald P. Formento, President of TDI, that TDI never employed more than 50 employees within a 75 miles of the Deer Park worksite, and that as a result, Gibson does not meet the definition of an eligible employee within the meaning of 29 U.S.C. § 2611(2)(B)(ii). As an exempt employer, this court has no jurisdiction to consider Gibson's claim. (Doc. 23, Ex. C., ¶ 2.) With respect to Gibson's remaining claims for common law fraud and negligent misrepresentation, TDI requests that the court refrain from exercising supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) and dismiss these claims without prejudice. Gibson asserts that claims for estoppel, laches, and waiver would remain unadjudicated (Doc. 26, p. 5). However, these arguments benefit Gibson only if the FMLA governed TDI in the first place. It did not because TDI was an exempt employer. Thus, whether TDI represented itself as an employer who would comply with the FMLA may bear on Gibson's state law claim for fraud, but cannot create federal subject matter jurisdiction.

The Fifth Circuit Court of Appeals has upheld a district court determination, and granting of summary judgment for the employer, when an employee was not an "eligible employee" within the meaning of the FMLA because the employer had fewer than 50 employees at its headquarters (although greater than 50 employees when combined with employees at a worksite within 88.5 miles over public roadways), depriving the Court of the ability to determine the employee's entitlement to benefits. *Bellum v. PCE Constructors, Inc.*, 407 F.3d 734, 737-39 (5th Cir. 2005). In *Dolese v. Office Depot, Inc.*, the Court of Appeals also found dismissal of an employee's FMLA claims appropriate, after considering the FMLA

"eligibility" determination prior to any potential analysis of the FMLA's entitlements, and found that the Plaintiff, Dolese, had not been employed for the requisite 12 months within the requirements of 29 U.S.C. § 2611, depriving the court of the opportunity to consider Dolese's FMLA cause of action as he was not an eligible employee; this was the case, the Court found, even though the employer Defendant, Office Depot, had generous policies defining employee eligibility for FMLA protection. 231 F.3d 202, 203 (5th Cir. 2000). In its reasoning, the *Dolese* Court specifically relied upon *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604 (6th Cir. 1998), for the proposition that "a contractual agreement to provide enhanced benefits does not provide the federal courts with jurisdiction." *Id.* (*citing Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d at 608.) In *Douglas*, the Sixth Circuit Court of Appeals had found that because the parties could not create subject matter jurisdiction by contract where none existed, and as removal jurisdiction was premised on the factor of Plaintiff's claim arising under 28 U.S.C. § 1331, the district court was deprived of subject matter jurisdiction *ab initio* where the employer did not meet the statutory definition of an employer who employed the requisite number of employees. *Douglas*, 150 F.3d at 607-8. This was the case even though the employer had adopted the policies of the FMLA in its contracting with its employees. *Id*.

Gibson has not rebutted evidence TDI has put forth that TDI never employed 50 or more individuals within a 75 mile radius of the Deer Park worksite where Gibson was employed up until his termination on May 3, 2004. (Doc. 27., p. 1.) As such, TDI argues, it remains undisputed within the meaning of the FMLA that Gibson does not meet the definition of an "eligible employee." Furthermore, TDI asserts that Gibson cannot cite any applicable precedent from this circuit regarding any theory of estoppel. (*Id*. at pp. 2-3.) The court agrees

that TDI is exempt from any requirements imposed by the FMLA. Consequently, this court has no jurisdiction to consider Gibson's claims.

Gibson has also filed a Motion for Permission to File Interlocutory Appeal and for Related Stay (Doc. 30). He argues that if the court should decide the action adversely to Gibson on the basis of "eligibility" this question should be appealed now so that the issue can be decided prior to the division of this litigation to two courts: an appeal of this court's adverse determination to the Fifth Circuit, and the continuation of this action in the state court. (*Id.* at p. 2.) The Court does not believe that the issues in this case warrant an interlocutory appeal.

**IV.    Conclusion**

Accordingly, it is hereby

**ORDERED** that the Plaintiff, Tommy F. Gibson, Sr.'s Motion for Partial Summary Judgment on Liability and Integrated Relief (Doc. 22) is **DENIED,** and the Motion for Summary Judgment (Doc. 23) of Defendants, Transport Drivers, Inc., Leonard Ray Privitt, individually, and Kris Iwanski, individually, is **GRANTED** such that Tommy F. Gibson's FMLA claims is **DISMISSED** for lack of subject matter jurisdiction, and any remaining pendent state law claims are **DISMISSED** without prejudice; and, it is further

**ORDERED** that Tommy F. Gibson, Sr.'s Motion for Permission to File Interlocutory Appeal and for Related Stay (Doc. 30) is **DENIED**.

SIGNED at Houston, Texas, this 8th day of March 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE